N. C. CLAYTON & CO. v. GALVESTON COUNTY.

Decided March 23, 1899.

**1. Architect—Plans and Specifications—Commissions.**

An architect is not entitled to recover commissions on plans and specifications for a courthouse, which were adopted by the commissioners court where, after their original submission, without the knowledge of the court, but at the instance of a member of the committee, to which they had been referred, he attached a "rider,," the effect of which was to make his guarantee that the cost of the building should not exceed a certain sum conditional upon the use of specified material, whereas the plans and specifications as originally drawn called for either of several kinds of material in the alternative, although he was not guilty of fraud, concealment, or misrepresentation.

**2. Same—Rejection of Plans.**

Where the commissioners court has rejected plans and specifications for a courthouse because of material alterations, it is not bound to consider any further propositions from the bidder submitting them.

**3. Same—Bidder's Option.**

An architect who prepares plans and specifications permitting the use of either of several kinds of material for a particular purpose, and guarantees that the cost of the building erected accordingly shall not exceed a specified amount, does not have the option to select any one of the kinds of material specified, but his guaranty permits the use of any one of the kinds.

**4. Constructive Notice to Commissioners Court.**

The knowledge acquired by a member of a commissioners court, while acting as a member of a committee to which the plans and specifications for a courthouse had been referred, of material changes in the same, is not constructive notice to the court.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Davidson, Minor & Hawkins* and *Austin & Rose,* for appellants.

*Lovejoy, Sampson & Malevinsky* and *Jas. B. & Chas. J. Stubbs,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by N. J. Clayton & Co. against the county of Galveston to recover commissions for plans and specifications for a courthouse furnished to the county at the request of the Commissioners Court, and for damages on account of an alleged breach of contract for the supervision by plaintiffs as architects of the construction of a courthouse in accordance with such plans and specifications. The county answered, admitting the adoption of the plans and specifications, but denied liability on account of material alterations therein made by the plaintiffs, without the knowledge of the Commissioners Court, between the time of the submission of the plans and specifications and their adoption. Plaintiffs demurred to the answer, that it presented no defense because it did not show that the action of the Commissioners Court adopting the plans and specifications was the result of any fraud, concealment, or misrepresentation on the part of plaintiffs. The demurrer was overruled, and the case was tried by jury and resulted in a verdict and judgment for the defendant.

Plaintiffs are architects, and on May 24, 1897, in response to an advertisement ordered by the Commissioners Court of Galveston County, submitted to the court, in competition with other architects, plans and specifications for the construction of a courthouse for said county, not to exceed the cost of $175,000. The architects competing were required to guarantee that the cost of the building would not exceed the sum mentioned, and to secure such guaranty the competitor whose plans and specifications were adopted was required to enter into a bond with sureties in the sum of $25,000. In compliance with such requirement, plaintiffs presented to the court in connection with their plans and specifications the following guaranty: "We guarantee that said courthouse can be constructed in accordance with the plans and specifications submitted by us for a sum not exceeding $175,000, exclusive of our commissions, and we stand ready to furnish you with a bond in the sum of $25,000, with good and sufficient sureties, to that effect."

All of the architects presenting plans and specifications were permitted to address the court in behalf of their respective plans from May 24th to May 26th, and the court selected the plans and specifications of three of the architects, including plaintiffs', and referred them to a committee composed of two of the members of the court and two other persons, with instructions to examine them and ascertain and report back to the court whether they were so complete that a contractor could bid on them. This committee reported to the court on May 27, recommending two of the plans, those of plaintiffs and those of Sanguinet & Messer; whereupon the court, by its order made and entered on that day adopted and accepted the plans and specifications of the plaintiffs, conditioned upon their execution of the bond to secure their guaranty as to the cost of the building. The bond was executed and approved by the county judge.

The specifications accompanying plaintiffs' plans called for different kinds of material for the same portions of the work, some of the material costing less than other material provided for the same work. During

their examination of the plans and specifications referred to them, the committee conferred with the architects about them; and after the committee had settled upon their report and adjourned, Barnes, one of the commissioners, requested the plaintiffs to have their specifications call for only one class of material for the several parts of the work, and Rabbitt, one of the plaintiffs, prepared and put with the specifications, but not attached thereto, a paper signed by him for his firm, dated May 27, 1897, and addressed to the Commissioners Court, as follows: "Our proposition of May 24, 1897, is based upon the following:" Then follows eleven paragraphs in writing, ten of which designate one particular kind of material for the several parts of the work; the eleventh excludes the cost of the sidewalk provided for in the specifications from the entire cost of construction. This paper was referred to in the trial of the case as the "rider." Rabbitt also made pencil memoranda upon the margin of the specifications corresponding with the changes contained in the rider. The marginal notes were made after the specifications had been examined by the committee. The rider was rolled up in the plans and was taken into the courtroom, but was not mentioned in the report of the committee, and was never presented to the court nor called to its attention, and the order accepting plaintiff's plans and specifications was made without any knowledge on the part of any member of the court, except Barnes, of the rider or of what it contained, or of the marginal notes on the specifications. The alterations made in the specifications by the rider materially and greatly reduced the cost of the construction of the building by the specification of cheaper material for the work. On May 29th the plans were opened and the rider discovered. The county judge called a meeting of the Commissioners Court and the plaintiffs' plans and specifications were referred back to the committee for examination and report of any changes. The committee reported on June 1st that the pencil notes on the margin of and the interlineations in the specifications had been added since the committee first examined the same, and that the rider then attached to the specifications was not attached thereto when before examined by the committee. A committee of experts was then appointed by the court to ascertain the difference in the cost of the construction of the courthouse by the original specifications and the cost as changed by the rider. This committee reported in detail showing an aggregate reduction in the cost of construction by the rider of over $60,-000. This report was laid before the court on June 1st, and the plaintiffs were present and Clayton explained that it was not intended to exclude the cost of the sidewalk from the cost of construction. After consideration of the matter, it was ordered by the court that the plans and specifications of N. J. Clayton & Co. be rejected. The plans and specifications of Sanguinet & Messer were then adopted by the court, and the courthouse is now being constructed under a contract in accordance therewith. If their plans had been finally adopted the plaintiffs would have been entitled to a commission of $3\frac{1}{2}$ per cent of the contract price for the erection

of the building and a further commission of 1½ per cent for superintending the construction thereof.

The purpose of the Commissioners Court was to build a courthouse for Galveston County to cost about $175,000, exclusive of the commissions of the architect for the plans and specifications of the building and the supervision of the construction thereof, and not to exceed that sum. In order to keep the cost of the building within the architect's estimates, all architects submitting plans were required to guaranty that the building could be constructed within the estimate, and to execute a bond to the county judge with sureties to that effect. Plaintiffs and other architects submitted plans and specifications for a building to cost about $175,000, and which they represented could be built for that sum. In the specifications accompanying their plans prescribing the character of the work to be done, and the kind of material to be used, different kinds of material were named in the alternative for the same character of work. These plans and specifications were submitted to the court on May 24th, and on that and the two successive days the architects were heard in support of their several plans, and the plans of two firms, those of plaintiffs and of Sanguinet & Messer, were selected by the court and referred to a committee, consisting of two members of the court and two other persons, for examination and report whether they were sufficiently complete for contractors to make bids upon. After examination by the committee and after the committee had adjourned, upon the suggestion of Barnes, one of the committee and also a commissioner, the plaintiff Rabbit made a written statement addressed to the court to the effect that the estimate of his firm was based on only one kind of material for each portion or character of work to be done, which was specified by him, and made marginal memoranda thereof on the specifications. This statement was addressed to the Commissioners Court and materially modified the original specifications limiting the guaranty of the plaintiffs as to the cost of the building to the cheapest material provided for therein. This statement or rider upon the original specifications accompanying the plaintiffs' plans was never presented to the court, nor ever called to its attention, and the plans of plaintiffs were accepted without the court knowing anything about it. When the rider came to the knowledge of the court it rejected the plaintiffs' plans. These facts were substantially pleaded by the defendant in bar of plaintiffs' right to recover. Plaintiffs addressed a demurrer to the answer, that it did not appear therefrom that the action of the Commissioners Court in adopting the plans was the result of any fraud, concealment, or misrepresentation on the part of plaintiffs. The court below took the correct view of the case in overruling the demurrer and in submitting it to the jury upon the question of materialty of the alterations in the original specifications and the knowledge of Commissioners Court that such alterations had been made when it approved the plans.

When plaintiffs submitted their plans and specifications for adoption, it was with the guaranty that the building could be constructed out of

either class of material mentioned in the specifications at a cost within the limited amount. This was the proposition that the court acted upon. If plaintiffs wished to modify or change their original proposition, they should have so notified the court before its action. They could not do so by a writing that was never presented to the court nor called to its attention. What the court acted upon was the plans and specifications submitted to it, and not upon the plans and specifications as modified and changed by the rider, which materially altered the obligation of the plaintiffs. It follows from what has been said that the special instructions requested by the plaintiffs, to the same effect as the demurrer, and to find for plaintiffs because the alterations were not made after the adoption of the plans, were properly refused. This relates to the second, third, fourth, fifth, and sixth assignments of error. The tenth and fourteenth assignments are also based upon the contention that the court was bound by the adoption and acceptance of plaintiffs' plans and specifications, because the order had been written out and placed with them and the marginal notes made on the specifications before the vote of adoption, and the Commissioners Court was not prevented from becoming acquainted with the changes made by them by any fraud, concealment, or misrepresentation on the part of plaintiffs, and complain of the charge of the court and the verdict of the jury as being against the law and the evidence. As already stated, the charge of the court correctly submitted the issues; the evidence also fully sustained the verdict upon such issues.

Plaintiffs requested the court to instruct the jury that the matter of the sidewalks could not be availed of as a defense to plaintiffs' cause of action, and the refusal of the court to do so has been assigned as error. The instruction was properly refused, because the court was not bound to accept any further proposition from the plaintiffs, and had the right to reject the plans and specifications after the alterations had been made, provided they were material, as they were. Even if the instruction in itself had been a proper one, it could only have been of benefit to the plaintiffs on the ground that the jury might have found that the alteration as to the sidewalks was the only material alteration of the specifications, but the court is able to say as a question of law that several of the alterations were of such character as to make the proposition of plaintiffs, as modified by the rider, materially different from their original proposition, and the county not being bound by reason thereof, plaintiffs were not injured by the refusal of the instruction.

The plans and specifications and the guaranty accompanying them were a representation to the Commissioners Court that the courthouse could be constructed according to the plans out of either kind of material specified, and as the court had to act thereon and procure bids of contractors to build the house, it had the option of selecting the material whenever more than one kind was specified. Plaintiffs were not required to construct the building, and this case does not fall within the principle that where a party has promised to do one of two things he can exercise his option as to which he will do, as where one promises to deliver a horse

or pay a sum of money by a day certain. The representation or proposition of plaintiffs was to be acted upon by the defendant, and it had the right of option. Hence there was no error in the refusal of the court to instruct the jury that plaintiffs could require whichever material they chose to be used.

The charge of the court is not obnoxious to the objections urged under the thirteenth assignment of error. It is hypothetical in form and is not upon the weight of evidence. Whatever knowledge Commissioner Barnes may have had of the existence and contents of the rider could not be imputed to the court, and the rider having never been presented or called to the attention of the court by the plaintiffs, the committee, or any one else, and none of the members of the court, except Barnes, having any knowledge whatever of the existence of the rider, constructive notice of the existence of its contents could not be imputed to them on account of the knowledge of one of the members.

It is believed that what we have said disposes of all the questions raised. The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.