## HILL COUNTY v. ST. LOUIS SOUTHWESTERN RY. CO.

No. 912.

Court of Civil Appeals of Texas. Waco.

April 17, 1930.

Rehearing Denied Oct. 30, 1930.

John Abney, of Hillsboro, for appellant.

Collins & Martin, of Hillsboro, and Ramey, Calhoun & Marsh, of Tyler, for appellee.

BARCUS, J.

Appellee instituted this suit against appellant to recover demurrage in the sum of $2,-447.50, with interest from July, 1922. The cause was tried to the court and resulted in judgment being rendered for appellee for the full amount claimed.

It is revealed by the record that in 1922 appellant made a contract with the Hannah Construction Company to build some roads. Appellant was to furnish the gravel on the cars at the place of delivery. For convenience of all parties at interest, appellee railway built at appellant's expense a switch at Chaplin, halfway between Hubbard and Mt. Calm, same being about four and a half miles from each of said places. Said switch track would hold eight or nine cars. Appellant owned a gravel pit near Waco, McLennan county, and hired a man to load the gravel on the cars and deliver same to appellee, to be by it hauled to Chaplin. The gravel bed was on a switch of the Missouri, Kansas & Texas Railway Company and the gravel was loaded on Missouri, Kansas & Texas cars, and said railroad switched said cars when loaded to the track of appellee, and appellee gave the original bills of lading for all cars of gravel. Appellee was operating a local freight train from Waco to Corsicana, which went out one day and back the next. Said freight train would fill the switch at Chaplin going out from Waco and then carry sufficient cars to Hubbard, where the next day they would be picked up and brought back to Chaplin, and in that way appellee attempted to deliver the gravel as rapidly as the Hannah Construction Company could unload same at Chaplin. The cars were all billed in the name of Hill county as consignor and consignee. The Hannah Construction Company was an independent contractor and was receiving and unloading the gravel at its expense. Between April 17th and May 1st, the agent of appellant loaded approximately 140 cars of gravel, for which appellee gave its bills of lading and thereby contracted and agreed to deliver same to Chaplin. About May 1st the agent of appellee at Waco notified the county judge of Hill county that there were more than 100 cars held in the yards at Waco, and in response thereto said county judge immediately came to Waco and stopped the loading of gravel until appellant was notified by the agent of appellee that it was then in position to receive additional cars for Chaplin. The major portion of appellee's claim for demurrage is for the time it held said cars of gravel in Waco, the original point where same were received for shipment; appellee's contention being that, since there was not room at Chaplin to deliver said gravel, it was entitled to hold same at the point received and collect demurrage.

As we view the record, there are two major controlling issues: First, whether, under the National Car Demurrage Rules, appellee could hold the cars at the place where they were received and require appellant to pay demurrage; second, whether there was sufficient notice given to appellant by appellee as required by said demurrage rules.

Rule 3, section B, of the National Car Demurrage Rules, provides that time will be computed from 7:00 o'clock a. m. after the day on which notice of arrival is sent or given to the consignee. Section C–1 of said rule provides that time will begin at 7:00 a. m. after placement after the day on which notice of arrival is sent or given consignee. Section D of said rule provides that time will be computed on other than public delivery tracks from 7:00 a. m. after actual or constructive placement on such track. Note 1 to section D of said rule provides that actual placement is made when the car is placed on the unloading track, and, if such placement is prevented by any cause attributable to the consignor or consignee, the car shall be considered constructively placed when put on some other track at place of destination other than the track designated.

Rule 4 of said rules provides that notice shall be given to the consignee within twenty-four hours after the car has arrived at destination. Section C of said rule provides that written notice to the consignee of readiness to deliver on other than public or industrial tracks at point of destination will constitute notification to the consignee.

Section A–1, Rule 5, provides that, when a car is consigned to an industrial track and cannot be delivered because of the inability of consignee to receive it or because of any condition attributable to the consignee, the car will be held at destination, or, if it can-

not be accommodated there, at the nearest available hold point, and written notice that the car is held and that the railroad is unable to deliver will be sent to the consignee, which will be considered constructive placement. Section B-1 of Rule 5 provides that, if the car cannot be delivered on the specially designated track at destination, notice shall be given to the consignee that delivery will be made at the nearest available point, and such delivery shall be so made, unless the consignee indicates a preferred available point.

The above constitute the substance of all the rules relative to what is required of the railway company in making or attempting to make delivery of a car of freight, and what it takes to constitute an actual or a constructive delivery and notice thereof. There was no claim by appellee against appellant for demurrage on the cars after they were delivered at Chaplin switch, appellee's contention being that there was, under the provisions of said rules, a constructive delivery of the cars held at Waco. There was neither pleading nor proof that Waco, the point where the gravel was received, was the nearest available holding point to Chaplin. Under the demurrage rules above quoted, appellee was compelled to transport said gravel to the nearest available holding point on its line to Chaplin. Under section B of Rule 5, it is specifically provided that, if the shipment could not be delivered at Chaplin, the point of destination, then appellee was required to notify appellant of the nearest available point and permit appellant to either receive it there, or at some other point that might be designated by the consignee. As we construe said demurrage rules, appellee was not entitled to charge demurrage while holding the cars in Waco, the point where they were received, until and unless appellant as consignee was notified that it was the nearest holding point, and that the cars could not be delivered at their destination because of the insufficiency of the trackage at said point, and that appellee stood ready to deliver said cars at a named point nearest to Chaplin. Our construction of said demurrage rules, therefore, necessitates a reversal of the judgment, since there is nothing to show the number of cars that were held in Waco on which demurrage was claimed and for which judgment was rendered.

With reference to the sufficiency of the notices given by appellee to appellant that it was holding said cars under the demurrage rules, the larger portion of said notices were mailed to Marion Cleyette, the auditor of appellant. Objection was made to the introduction of said notices because it was not shown that Marion Cleyette was the proper party or that he had any authority to receive said notices, or that notice to him was in any way binding upon or notice to appellant.

As we construe the demurrage rules, the railway company is required, before it can charge demurrage for failure to unload a car, to notify the consignee of the arrival of the car and the place where same can be unloaded, if there is no room or place for same to be unloaded at its destination. We do not think notice to the county auditor was, within the contemplation of the law, notice to appellant. Article 2027 of the Revised Statutes provides specifically that, in a suit against a county, the county judge must be served with citation. Our courts have held from an early date that no suit can be filed by or in the name of the county except· by an order of the commissioners' court. Looscan v. Harris County, 58 Tex. 511; Edmonson v. Cumings (Tex. Civ. App.) 203 S. W. 428. Article 2351 of the Revised Statutes states certain specific powers and duties of the commissioners' court, and by virtue thereof said court is designated as the managing board of all of the affairs of the county. Clearly, before the county can be bound by any contract or any obligation, same must arise either by a contract or an obligation created by the commissioners' court. Under articles 1651 to 1666 of the Revised Statutes, the duties of the county auditor are defined, his duties primarily being to audit the books of all the officials of the county who may handle any finances. He is not such an officer of the county as can receive notices that will bind the county. In Clayton v. Galveston County, 20 Tex. Civ. App. 591, 50 S. W. 737, it was specifically held that notice to a member of the commissioners' court was not notice to the court. We do not think that the notices served on or sent to the county auditor were sufficient notice to appellant to authorize appellee to charge demurrage on cars that it was claiming to hold by reason of failure to be unloaded. Some of the notices that were sent were directed to the county judge of appellant. The larger portion, however, were sent to Marion Cleyette as county auditor. Appellee could only recover dmurrage on the cars that were held after the county judge or commissioners' court of said county were notified that the cars were at the point of destination, or at the nearest holding point to the point of destination, ready for delivery.

Appellant complains of the action of the trial court in permitting the witnesses Bender and Hord to testify that they mailed certain notices of certain designated cars as being held by the railway company for demurrage, on the theory that said witnesses had gotten their information from other parties and same was therefore hearsay. We do not think there is any merit in this contention. It was immaterial from what source the agents of appellee obtained their information. If as a matter of fact proper notices were given to the proper parties, same were

sufficient, although the information obtained by the agent of appellee who gave the notice was received from various and different sources. If there were cars being held at the point of destination or at the nearest point thereto, if same could not be received at destination, ready to' be delivered to the consignee, the only duty resting upon the railway company was to have the consignee notified thereof.

Appellee contends that, since appellant was both consignee and 'consignor, and had actual knowledge that the switch at Chaplin would not accommodate more than nine cars, it was not required to notify appellant that more cars had been loaded and tendered to and accepted by appellee than could possibly be delivered at Chaplin. We do not agree with appellee. While appellant was both consignor and consignee named in each of the bills of lading, the cars were being unloaded by the Hannah Construction Company, independent contractors. There was no allegation or proof that appellant knew how many freight trains daily could deliver gravel at Chaplin, nor how many the construction company could or did unload. The demurrage rules are primarily a penalty, prescribed against a person who fails and refuses to unload a car of freight within forty-eight hours after he has received notice that the freight has arrived at its destination. It is therefore a necessary requirement, before the penalty can be collected, that a railway company, for whose benefit same is inflicted, must comply with said rules and make delivery or tender of delivery and give the notice therein required. The general rule seems to be that a railway company can refuse to accept a shipment of freight to a named point of destination if and when conditions are such that same cannot be delivered at said point. If, however, the railway company does accept freight to a named point of destination without notifying the shipper that same cannot be delivered, it must respond in damages for all loss suffered by the shipper by reason of same not having been promptly delivered or tendered for delivery. Texas & N. O. Ry. Co. v. Kolp (Tex. Civ. App.) 88 S. W. 417; Atchison, T. & S. F. Ry. Co. v. Word (Tex. Civ. App.) 159 S. W. 375; Missouri, K. & T. Ry. Co. v. Stark Grain Co., 103 Tex. 542, 131 S. W. 410. Appellee, by having accepted the large number of cars for delivery at Chaplin, without having notified the shipper that it could not deliver same by reason of limited facilities, could not then charge demurrage while said cars were being held at the point of shipment. It was the duty of appellee to deliver or tender delivery of said cars, under the demurrage rules, to the nearest available point to that called for in the bills of lading, and to notify the con-

signee of the arrival of the shipment at the place where same was tendered for unloading.

The judgment of the trial court is reversed, and the cause is remanded.